*E. J. Marshall* and *E. B. King*, for plaintiff.

*Theodore Hoard* and *Malcolm Kelley*, for defendant.

---

## EQUIVOCAL REJECTION OF A LEASE BY AN ASSIGNEE.

[Circuit Court of Lucas County.]

ABEL M. RAWN, ASSIGNEE OF BAIRD & FIELD, v. THE HOTEL MADISON COMPANY.

Decided, January 25, 1904.

*Assignee—Gives Notice that He Will Not Accept Lease—But Thereafter Permits the Probate Court—To Order a Continuance of the Business Without Objection on His Part—And Offers the Lease for Sale—Assignee Liable for the Rent.*

Where an assignee for the benefit of creditors of a lessee of real property occupies the same, but gives formal notice to the owner of the property that he does not desire to accept the terms of the

lease, and indicates that he would consider better terms, and thereafter in a proceeding which was not adversary, permits the probate court, without objection on his part, to order a continuance of the business carried on therein, and has the lease appraised and offers it for sale and sells it, his action amounts to an obligation to pay the rent during the interim of his occupancy, and a verdict finding him liable for this rent will be affirmed.

PARKER, J.; HAYNES, J., and HULL, J., concur.

This action comes into this court on error. The action in the court below was by The Hotel Madison Company against Abel M. Rawn, assignee of Baird & Field, to recover rental on account of the occupation of the Hotel Madison by Rawn as such assignee, and the trial resulted in a verdict in favor of the plaintiff below for the amount claimed, to-wit, $832.80, which included the interest.

It appears that Baird & Field had been occupying the Hotel Madison, as tenants of The Hotel Madison Company; that they became insolvent and made an assignment of all their property, including this lease and leasehold interest, to Abel M. Rawn, under the statutes of the state for the benefit of creditors. That after Rawn became assignee he continued to occupy the hotel property for the period on account of which this claim for rental is made, to-wit, from the 12th day of January, 1902, to the first day of August, 1902, inclusive. The lease under which Baird & Field occupied provided for the payment of a rental of $500 per month, and the amount recovered is at the rate of $500 per month for this period.

It is averred in the petition that Rawn, after he became assignee, continued to occupy under this lease. That is denied in the answer. It is admitted that the firm mentioned was in possession of the hotel property, and it is averred that soon after the assignment the defendant, finding that the lease described in the plaintiff's petition had been executed, notified the plaintiff that he, as assignee, would not accept the terms of said lease and would not be bound by the same; and there are averments to the effect that at the instance and request of The Hotel Madison Company the assignee continued to occupy the premises for the period on account of which this action is brought for rental. And it is also claimed that the assignee occupied somewhat under compulsion—that is, that the assignee not only

desired to give up the lease and the property, but that he desired to vacate the premises, and that by the order of the probate court, made at the instance of the Hotel Madison Company, he was required to continue the use and occupation of the premises, and, therefore, it is contended on behalf of the assignee that one of two conditions resulted from that; *i. e.,* either that he is liable simply for a *quantum valebant,* or that he is not liable at all, because, being in at the instance of the Hotel Madison Company, at its request, to preserve its property, for its interest, he must be held to have had this use of the premises tendered to him as a gratuity, and that therefore he is not liable to pay anything for the use and occupation; and it is also said in that connection that as a matter of fact the rental provided for by the lease was very excessive, more than any one could afford to pay for the premises, and that during this period the assignee lost money in running the hotel, and that if he is required to pay rental at the rate of $500 a month it will result in taking that much money that ought to go to other creditors and paying it to the Hotel Madison Company, in effect as if it were a preferred creditor, because it is to be paid as a part of the costs and expenses of administration. The whole question turns upon whether the assignee elected—took such action as amounts to an election—to occupy these premises under the lease. If he did, then he is bound to pay the rental according to the terms of the lease. If he did not, if he rejected the lease, then perhaps one of the two possible results stated by the plaintiff in error would follow: either that he would be liable only for a *quantum valebant* or for nothing.

It appears that the lease in question was made on the 18th day of September, 1900, to one Leona T. Field and that she subsequently assigned it to The Frisco Hotel Company. The lease provides that it may not be assigned without the consent of the lessor, and there is no formal assignment and no formal assent by the lessor to an assignment from the Frisco Hotel Company to Baird & Field, and therefore it is contended on behalf of the plaintiff in error that Baird & Field were not in fact lessees under this lease and that it was not an asset conveyed by the deed of assignment, and that, therefore, the judgment

is wrong. But we are well satisfied from the evidence that Baird & Field had acquired the rights of the Frisco Hotel Company, with the assent of the Hotel Madison Company, and that by the agreement of Baird & Field with the Hotel Madison Company Baird & Field were occupying as tenants of the Hotel Madison Company under this lease at the time the assignment was made, and that, therefore, none of the parties were in a position to dispute that the rights of the lessees were assigned and conveyed by Baird & Field to Abel M. Rawn by the deed of assignment. Now it appears that the assignee, after accepting the assignment, continued, as I have said, in the occupation of the hotel. It seems that some time before that the boarding of guests by the lessees had been discontinued; that the guests of the hotel were generally roomers, some few being transients; that the assignee carried on the business during this time for which the rent was charged about as the assignors had theretofore carried it on. But it also appears that on June 16, 1902, shortly after the deed of assignment was filed, this notice was served upon the Hotel Madison Company:

"TOLEDO, OHIO, June 16th, 1902.

"THE HOTEL MADISON COMPANY,
                    "Toledo, Ohio.

"Gentlemen:

"At the request of A. M. Rawn, assignee of Baird & Field, you will notice that as such assignee he does not desire to accept the terms of lease of Hotel Madison. Will you please state the amount you will charge for the occupancy of the building by Mr. Rawn until such time as he is able to sell its contents, which are assets of the firm of Baird & Field? It is desirable that you make an early answer.

"Very truly yours,
                    "C. A. THATCHER."

Richard Waite, as secretary of the Hotel Madison Company, acknowledges service of this notice upon the same day.

The order of the probate court, to which I have referred, as it appears in the record, has no date; it reads as follows:

"IN THE MATTER OF THE ASSIGNMENT OF BAIRD & FIELD.

"The Hotel Madison Company through its attorney in open court having made application that the assignee in above matter

be ordered and directed to continue the business of the assignors; the court being fully advised and there being no objections offered, and the court deeming it for the best of all parties in interest, hereby orders and directs said assignee to continue the business of the assignors, and to furnish accommodations to guests now in said hotel and those who may thereafter apply.''

But in addition to this evidence indicative of the purpose of the assignee, we have his own testimony and certain other records introduced in evidence, which disclose that this proceeding in the probate court which resulted in this order was not adversary, as the order recites—there was ''no objection offered'' to its being made—and the assignee testifies, in effect, that he had gone to the probate judge and talked with him about this matter—about his situation there—and suggested that some order might be made that would protect him so that he might know what his responsibilities would be in the premises. His testimony upon that subject appears upon pages 23 and 24 of the record:

''Q. I understood you to say, in your direct examination, to Mr Thatcher—after calling your attention to this notice—he asked you why you didn't follow it up, and you stated that you went to the probate court and consulted with him, and he told you you had better keep it open, and at that time this order was shown you? A. No, sir; it was not.

''Q. If you made that statement, you were incorrect? A. Not necessarily; that order was made to put me right with the court; the court said he would have the order made; he had already made it verbally some time before this. I said to him I wanted it right and he said 'I will have the order made.'

''Q. This was made at your request, in order to have something on record? A. I don't know that it was made at my request.

''Q. You did ask to have something on record? A. Yes. I wanted something on record, to show what I was doing and why I was doing it.

''Q. This was the order that was made then? A. I expect it was; there was something made.

''Q. The court told you he would do that, did he? A. I think he did.

''Q. You were satisfied with that and went on with the

business? A. I did before and I went on, and that is what I was doing—

"Q. And you went over and had a talk with the court? A. Yes—in order to have something definite."

It appears from that and other evidence in the case that this was not an adversary proceeding. We regard that evidence as competent and as not contradicting the record of the probate court in any respect. But, moreover—and a matter of much more influence with us—it appears that the assignee offered for sale the property of the assignors, consisting of chattels and furnishings of the hotel, and that he was not able to make a judicious sale, and that thereupon he reported to the probate court that he would not be able to make a judicious sale unless he also sold this lease with the property; that persons who thought of buying the property had said to him, in effect, that they did not desire to buy it and be obliged to remove it at once, but if they could buy the lease giving them the right to occupy the hotel, they would feel disposed to buy the chattel property. And in pursuance of that representation to the probate court he was authorized to sell the lease and did sell it. Now it seems to us that this notice that he did not desire to occupy the property under the lease, and indicating a desire to obtain better terms from the Hotel Madison Company, is not an unequivocal rejection of the lease; and that this order of the probate court was not in the form of an injunction upon him in an adversary proceeding compelling him to occupy the hotel; but, in the light of his evidence, that it is an order apparently acceptable, if not positively agreed to by all parties concerned, and that his action in having the lease appraised— the leasehold interest—and offering it for sale and selling it, is an unequivocal acceptance under the lease; that he can not blow hot and cold with reference to this matter; that if the lease were rejected and made a dead letter it could not be revived afterwards to be sold; that if it were kept alive it was kept alive by virtue of the fact of payment or the assumption of an obligation to pay rental for this interim on account of which this action is prosecuted, and we think it very clear under this evidence that the verdict of the jury finding him

liable for the amount of the rental sued for was right, and, therefore, the judgment of the court below will be affirmed.

*Charles A. Thatcher,* for plaintiff in error.

*F. M. Dotson,* for defendant in error.